UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| AMBER C.,[1] | | |
| | Plaintiff | DECISION and ORDER |
| -vs- | | |
| | | 1:22-CV-00282 CJS |
| COMMISSIONER OF SOCIAL SECURITY, | | |
| | Defendant. | |

_____

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Social Security Disability Insurance ("SSDI") benefits.  Plaintiff contends that the Commissioner erred, both in failing to evaluate the effects of her irritable bowel syndrome ("IBS") and gastroparesis on her ability to work, and in misclassifying her past relevant work.   Now before the Court is Plaintiff's motion (ECF No. 8) for judgment on the pleadings and Defendant's cross-motion (ECF No. 10) for the same relief. For reasons discussed below, Plaintiff's application is denied, and Defendant's application is granted.

STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."   20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim. In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West). Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the

3

administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review— even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec.*, No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'—

that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).  "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action, which is set forth in the parties' papers.   The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

Plaintiff claims that she became disabled on January 29, 2016, due to a

5

combination of impairments including spinal pain, fibromyalgia, irritable bowel syndrome, gastroparesis, asthma, and joint pain. (Tr. 15). Of those impairments, Plaintiff claims to be disabled primarily due to constant pain in her back. *See, e.g.*, Tr. 53 ("My pain is never relieved. I'm never not in pain."); (Tr. 56) (Plaintiff indicated that "some days," she "can't sit upright for more than 10 seconds" due to pain.).

Plaintiff's past relevant work included a stint as a quality assurance inspector[6] at a shipyard in Norfolk, Virginia, inspecting paint on ships. Regarding the particular duties of that job, Plaintiff testified, in pertinent part, as follows:

> Q. And as an inspector, what did you inspect?
>
> A. I inspected fuel tanks, tanks, all parts of the ships, from the top to the bottom of the ship.
>
> Q. For what? Your application said a paint inspector.
>
> A. Yes, sir, I was inspecting [coating][7] applications as well as removal of paint.

(Tr. 87).[8]

On May 30, 2018, Plaintiff applied for SSDI benefits. After Plaintiff's claim was denied initially, she had a hearing before an ALJ, who, on March 19, 2020, issued a Decision denying Plaintiff's claim.[9] However, the Appeals Council vacated that decision

---

[6] (Tr. 87) ("I was a QA inspector.").
[7] The transcript appears to have mis-transcribed the word "coating" as "coding."
[8] *See also*, Tr. 124 (During his questioning of the VE, Plaintiff's attorney referred to "the finish inspector job where she was walking around ships inspecting paint."); Tr. 39, 47, 354 (Plaintiff agreed that she had been a "paint inspector."); Tr. 353 (Plaintiff indicated that she had specialized training as a "paint inspector."); Tr. 40 (Plaintiff indicated that much of her job involved inspecting paint on ship fuel tanks.)
[9] At the initial hearing, Plaintiff indicated that her IBS and abdominal pain and cramps were signs of fibromyalgia. (Tr. 85). The ALJ found that Plaintiff had severe impairments including IBS, though she concluded that Plaintiff's gastroparesis was not severe. (Tr. 150). The ALJ found, at the fourth step of

6

and remanded the matter for a new hearing.[10]

On July 26, 2021, a new ALJ conducted a hearing, at which Plaintiff appeared with her attorney.  Plaintiff and a vocational expert ("VE") testified at the hearing.  In addition to describing her other medical conditions, Plaintiff testified concerning her gastrointestinal problems. (Tr. 46, 48-50, 63).  Essentially, Plaintiff stated that her gastroparesis made her nauseous and unable to eat, and that her IBS caused her to experience alternating constipation and diarrhea.  Plaintiff indicated that her IBS caused her to frequently need to be in a bathroom, for unpredictable amounts of time.

On August 3, 2021, the ALJ issued a Decision denying Plaintiff's claim. (Tr. 7-27). The ALJ applied the five-step sequential evaluation used for evaluating disability claims and found, in pertinent part, that Plaintiff had severe impairments consisting of "obesity, fibromyalgia, degenerative disc disease of the lumbar spine, generalized anxiety disorder, adjustment disorder, borderline personality disorder, and major depressive disorder." (Tr. 12).  The ALJ did not include IBS or gastroparesis as impairments at the second step of the sequential evaluation, though she later referred to the fact that Plaintiff claimed to suffer from those impairments.

Specifically, as part of the ALJ's discussion of her RFC finding, her decision contains the following statements concerning Plaintiff's gastrointestinal problems: "At the time of her application, the claimant alleged disability due to . . . irritable bowel syndrome,

---

the sequential evaluation, that Plaintiff was not disabled because she could perform her past relevant work as freight operations clerk.

[10] The Appeals Council found that the ALJ had erred in classifying Plaintiff's past relevant work, doing secretarial-type tasks for a trucking equipment company, as a freight operations clerk. (Tr. 166-167).

gastroparesis"; "The claimant alleges that she cannot eat and that she has lost 50 pounds";[11] "The claimant testified and has told doctors that she has difficulty with oral medications because of gastroparesis"; "She also reported [to the consultative examiner] irritable bowel symptoms, including painful diarrhea.  She said she has been told that she has diarrhea and gastroparesis"; "[She] said that she stopped working in January 2016 because of abdominal pain"; "She said she can only do light cooking, cleaning, laundry and shopping because of upper body pain and abdominal pain." (Tr. 15-18).

The ALJ concluded that Plaintiff had the RFC to perform less than a full range of light work (Tr. 15), and subsequently found, at the fourth step of the sequential evaluation, that Plaintiff was not disabled since she could perform her past relevant work.  In particular, the ALJ found, based on testimony from the VE, that Plaintiff's past relevant work fit under the job title of "Finish Inspector," DOT 741.687-010, and that Plaintiff could perform that job as it is generally performed.  Plaintiff appealed, but the Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

On April 13, 2022, Plaintiff filed the subject action, seeking review of the Commissioner's decision under 42 U.S.C.A. § 405(g).  Plaintiff maintains that the ALJ committed two errors that require remand.  First, Plaintiff contends that the ALJ failed to properly consider the effects of her IBS and gastroparesis on her ability to work.  In that regard, Plaintiff asserts that the ALJ erroneously failed to include those conditions as

---

[11] Despite this claim, Plaintiff was described as obese throughout the relevant period. *See, e.g.* (Tr. 16) ("The claimant was measured at 5'4" tall and she weighed 215 pounds.").

8

severe impairments at the second step of the sequential evaluation, and that such error was not harmless, since the ALJ also failed to consider those conditions at the later steps of the sequential evaluation. *See, e.g.*, Pl. Memo of Law, ECF No. 8-1 at p. 18 ("The ALJ failed to assess Plaintiff's irritable bowel syndrome and gastroparesis at step two of the sequential evaluation process and throughout the remainder of the decision."). Plaintiff admits that the ALJ discussed those conditions in the decision, but nevertheless maintains that the ALJ erred since the ALJ "made no mention of Plaintiff's testimony concerning the length and frequency of her bathroom breaks."[12] Plaintiff contends that the ALJ's alleged failure to consider those ailments, and to provide any limitation for bathroom breaks in the RFC finding, was harmful, since the VE testified that "being off-task greater than 10 percent of the workday outside of normal breaks would not be tolerated" by employers.[13]

Plaintiff also alleges that the ALJ erred by classifying her past relevant work as that of "Finish Inspector," DOT 741.687-010, rather than "Hull Inspector," DOT 806.264-010. Plaintiff contends that her work as a paint inspector on ships, as she actually performed it, is dissimilar to the job of "Finish Inspector," which does not specifically involve inspecting pain on ships, but more typically involves inspecting paint on products in a manufacturing setting.[14] Plaintiff insists that her past work is more akin to that of "Hull Inspector," since that job involves inspecting ships. Plaintiff further contends that

---

[12] ECF No. 8-1 at p. 20.
[13] ECF No. 8-1 at pp. 19-20.
[14] *See*, Pl. Memo of Law, ECF No. 8-1 at p. 22 (Indicating that a paint inspector "inspects paint on only smaller, tangible items such as household items on a production line or in inspection bays. This job description says nothing about inspecting a ship.").

this error was detrimental since the "Hull Inspector's" job is a skilled position, with an SVP level of 8, which she could not perform with the RFC found by the ALJ, which limits her to work involving simple work-related decisions.[15]

Defendant opposes Plaintiff's application and cross-moves for judgment on the pleadings, maintaining, first, that any error by the ALJ in failing to include Plaintiff's IBS and gastroparesis as severe impairments was harmless, since the ALJ went on to consider those impairments at the later steps of the sequential evaluation. *See, e.g.,* Def. Memo of Law, ECF No. 10-1 at p. 6 ("The Commissioner agrees that these issues were not discussed at step two but maintains that lack of discussion at step two is harmless because the alleged impairments were considered in the rest of the decision, particularly in the RFC discussion."). Defendant further contends that the ALJ's RFC finding, which does not include any limitation for additional bathroom breaks, is supported by substantial evidence, stating in pertinent part:

> Plaintiff asserts that there should have been limitations in the RFC based on alleged gastrointestinal issues, particularly time off-task, and argues that she would be off-task over 10 percent of the day. Pl. Br. 19-20. However, Plaintiff does not meet the burden of proving that a more restrictive RFC was necessary. *See Poupore*, 566 F.3d at 306. Despite arguing that Plaintiff would need more than 10 percent of the workday off-task for bathroom breaks, substantial evidence does not support this limitation. For instance, none of the opinion evidence indicates that Plaintiff would require such time off-task. See Tr. 19. For instance, opinions from Dr. Lee, the State agency physician, Dr. Gary Elhert, and nurse practitioner (NP) Elizabeth Kelterborn, all of whom were aware of the irritable bowel syndrome and gastroparesis, do not include any limitations related to time off-task. Tr. 19; *see* Tr. 138-41, 611, 900. Specifically, Plaintiff noted to Dr. Lee that she had gastrointestinal symptoms including painful diarrhea; Dr. Lee diagnosed

---

[15] ECF No. 8-1 at pp. 22-23.

> painful diarrhea with gastroparesis and irritable bowel syndrome and opined Plaintiff had moderate limitations in prolonged sitting, prolonged standing, climbing stairs, and walking great distances. Tr. 16, 19, *see* Tr. 608-11. The ALJ found this opinion generally persuasive because it was consistent with the medical record and supported by the examination findings. Tr. 19; see 20 C.F.R. § 404.1520c. Dr. Elhert noted Plaintiff's alleged gastrointestinal symptoms, along with noting that Plaintiff's gastroparesis symptoms were well controlled with change of diet and medication as of April 2018. Tr. 140-41; see Tr. 552. Dr. Elhert opined that Plaintiff could perform a range of light work but made no mention of specific limitations for gastrointestinal issues or time off-task. Tr. 138-41. The ALJ found this opinion persuasive because it was consistent with treatment generally. Tr. 19. As Plaintiff notes, NP Kelterborn indicated that Plaintiff had irritable bowel syndrome in 2020. Tr. 943; *see* Pl. Br. 19. However, NP Kelterborn opined that Plaintiff could lift and carry up to 10 pounds; stand and/or walk six hours per day; sit about four hours per day; with no limitations for time off-task. Tr. 19; see Tr. 900. The ALJ found the opinion somewhat persuasive because the ability to lift and sit were not supported by clinical findings and that the extent of limitations were not fully supported by the opinion. Tr. 19. The opinion evidence, therefore, does not support a finding that time off-task was required.

ECF No. 10-1 at pp. 6-7. Defendant also contends that the ALJ was not required to specifically discuss Plaintiff's testimony concerning her alleged need for bathroom breaks, or to credit such testimony.

Defendant further indicates that Plaintiff's second argument lacks merit, since the ALJ did not err in classifying Plaintiff's past work as a finish inspector. On this point, Defendant argues in pertinent part:

> Though Plaintiff asserts that this was the wrong DOT classification because her specific function was working on a ship rather than with appliances, cars, toys, or bicycles, the VE properly identified the type of work that Plaintiff performed as a paint finish inspector even if it was not as she specifically performed the job. Pl. Br. 22; *see* Tr. 20, 72-73. Plaintiff said her past work included inspection readings, conducting coating inspections,

11

> and making paint removal inspections. Tr. 87, 404. She also noted doing paperwork related to the paint inspections. Tr. 39-40, 404. These tasks appear similar to the types of tasks in the finish inspector description noted above.
>
> In contrast, the position of hull inspector that Plaintiff asserts she performed (Pl. Br. 21-23) indicates that the position includes inspection of construction of the ship for conformance to plans, including examining "hulls, hull fittings, and riveting for defects, and alignment of plating and framing." DOT 806.624-010. The position also indicates that the job includes inspecting painted surfaces, observing "testing of tanks, decks, and compartments for strength of material for watertightness," opening various parts of the ships (such as doors, hatches, and valves) to verify fit and ease of operating, and inspecting heating and ventilation systems to ensure qualifications are met. *Id*. Plaintiff's description of her work does not indicate that she performed tasks such as checking fittings and riveting for defects, inspecting the general construction of the ship, testing for watertightness, or verifying fit of doors or hatches. *See* Tr. 38-41, 86-87, 403, 404. Though Plaintiff may have performed some of the tasks mentioned in the description, such as those related to inspecting paint and going through the ship, the overall DOT description does not appear to be the same type of work that Plaintiff performed.

ECF No. 10-1 at pp. 11-12.

Plaintiff filed a reply brief that reiterates her first argument but does not respond to Defendant's arguments concerning her second argument. The Court has considered the parties' submissions and the entire administrative record.

## DISCUSSION

<u>The ALJ's Alleged Error at Step Two</u>

Plaintiff maintains that the ALJ erred in failing to include her IBS and gastroparesis as severe impairments at Step Two of the five-step sequential evaluation, and that such error was not harmless since the ALJ also failed to consider those conditions at the later

12

steps of the analysis. Defendant disagrees and maintains that, even assuming the ALJ erred at step two by failing to include Plaintiff's IBS and gastroparesis as severe impairments, she nevertheless considered those impairments at the later steps of the sequential evaluation.

The parties' arguments reference the following principles of law that are commonly applied in this Circuit:

> An ALJ should make a finding of "'not severe' ... if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Mark K. v. Comm'r of Soc. Sec. Admin.*, No. 5:18-CV-627 (GLS), 2019 WL 4757381, at *1 (N.D.N.Y. Sept. 30, 2019) (quoting *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment ...." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985). However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work, will not be considered severe. *Id*. The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id*.
>
> The step two analysis "may do no more than screen out de minimis claims." *Vogt on behalf of Vogt v. Comm'r of Soc. Sec.*, No. 18-CV-231, 2019 WL 4415277, at *4 (W.D.N.Y. Sept. 16, 2019) (quoting Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995)). If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five. *Dixon*, 54 F.3d at 1030.
>
> Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244

13

>    (GLS/ATB), 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is
>    particularly true because the regulations provide that combined effects of
>    all impairments must be considered, regardless of whether any impairment,
>    if considered separately, would be of sufficient severity. 20 C.F.R. §§
>    404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

*Ann C. v. Comm'r of Soc. Sec.*, No. 6:19-CV-904 (ATB), 2020 WL 4284132, at *4 (N.D.N.Y. July 24, 2020), *aff'd sub nom. Cuda v. Comm'r of Soc. Sec.*, No. 20-2819, 2021 WL 4887993 (2d Cir. Oct. 20, 2021).  On the other hand, "[w]here an impairment is excluded at step two and the ALJ fails to account for functional limitations associated with the impairment in determining the plaintiff's RFC, remand for further proceedings is appropriate." *Jessica S. v. Comm'r of Soc. Sec.*, No. 6:22-CV-1250 (ATB), 2023 WL 5350988, at *6 (N.D.N.Y. Aug. 21, 2023) (citation omitted).

      Here, the ALJ mentioned Plaintiff's claims concerning IBS and gastroparesis when explaining her RFC determination.  Specifically, as noted earlier, the ALJ made the following references: "At the time of her application, the claimant alleged disability due to . . . irritable bowel syndrome, gastroparesis"; "The claimant alleges that she cannot eat and that she has lost 50 pounds";[16] "The claimant testified and has told doctors that she has difficulty with oral medications because of gastroparesis"; "She also reported [to the consultative examiner] irritable bowel symptoms, including painful diarrhea.  She said she has been told that she has diarrhea and gastroparesis"; "[She] said that she stopped working in January 2016 because of abdominal pain"; and "She said she can only do light cooking, cleaning, laundry and shopping because of upper body pain and abdominal

---

[16] Despite this claim, Plaintiff was described as obese throughout the relevant period. *See, e.g.* (Tr. 16) ("The claimant was measured at 5'4" tall and she weighed 215 pounds.").

14

pain." Accordingly, the Court finds that, even assuming the ALJ erred by failing to list IBS and gastroparesis as severe impairments at step two of the sequential evaluation, she adequately considered those impairments at the later steps of the analysis.

Still, the ALJ did not include any specific restriction in the RFC finding to accommodate those conditions. However, the Court believes that the ALJ's reasoning in that regard is evident from her decision, and supported by substantial evidence. To begin with, it appears that the ALJ generally did not find Plaintiff credible and/or accurate in her description of her limitations, since she emphasized several instances in which Plaintiff's statements were refuted by the record. For example, the ALJ pointed out that Plaintiff gave inconsistent explanations for why she stopped working. *See*, Tr. 15 ("The claimant reported that she stopped working because of her medical conditions, but she told doctors that she was laid off and then relocated.").[17] Consequently, to the extent the ALJ did not include further limitations in the RFC based on Plaintiff's testimony concerning the amount of time she spends in the bathroom, the Court agrees with Defendant that the ALJ was not required to credit Plaintiff's statements.

More importantly, the Court finds that the ALJ explained her decision not to include further limitations in the RFC finding, including any limitations relating to Plaintiff's IBS

---

[17] The ALJ also noted several other such instances. *See also*, Tr. 14 ("While the claimant endorses some difficulty with memory, her attention, concentration and memory were intact to testing upon consultative examination."); *Id*. ("Again, the claimant reports concentration difficulties due to her medical condition, medications and pain[, but h]er abilities were intact to testing upon consultative evaluation. Mental status examinations in her treatment notes show normal functioning in this area, though they document her subjective reports."); *Id*. at 16 ("[T]he claimant . . . relayed a history of numerous motor vehicle accidents in the past with injury to her neck and back. Prior records do not contain reports of injuries from motor vehicles, nor did the claimant report any such history on consultative examination."); *id*. at 17-18 ("The record does not show any increase in pain or symptoms due to [physical] therapy. . . . The claimant has reported[, however,] that she attended physical therapy, but that it increased her pain.").

15

and gastroparesis, by emphasizing that the medical opinion evidence did not warrant further limitations.  That is, the ALJ explained that, with a few exceptions not relevant to this discussion, the medical opinion evidence supported the RFC finding.  In that regard, consultative examiner Russell Lee, M.D. ("Lee") and treating Nurse Practitioner Elizabeth Kelterborn, N.P. ("Kelterborn"), both of whom were aware of Plaintiff's claims concerning her IBS and gastroparesis, did not include any limitation in their opinion statements concerning Plaintiff's alleged need to take additional bathroom breaks.  Indeed, the record contains no opinion evidence supporting Plaintiff's contention that she would be off-task due to her IBS and gastroparesis.

The ALJ did not specifically discuss the absence of any medical opinion supporting such a limitation, but, rather, she emphasized that, with certain exceptions not relevant here, her RFC finding was "supported by the objective medical evidence, the claimant's treatment history, the claimant's admitted activities and the opinion evidence." (Tr. 19). The ALJ was entitled to rely on the absence of any medical opinion indicating that Plaintiff would be off-task due to her IBS and gastroparesis. *See, e.g., Ruiz v. Comm'r of Soc. Sec.*, 625 F. Supp. 3d 258, 268 (S.D.N.Y. 2022) ("In the absence of a persuasive medical opinion to the contrary, the ALJ was entitled to rely on the absence of limitations reflected in the record to conclude that Ruiz could perform light work."); *see also, Jeffery v. Kijakazi*, No. 21CV6502JLRBCM, 2023 WL 3853704, at *14 (S.D.N.Y. Feb. 8, 2023) ("[N]one of the medical opinions in the record, not even Dr. Wendt's, states or suggests that plaintiff's HIV infection limited his ability to work. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (ALJs are "entitled to rely not only on what the record says, but also on

16

what it does not say."); *Soto v. Colvin*, 2015 WL 1726541 at *19 (S.D.N.Y. Apr. 14, 2015) (ALJ "was entitled to rely on that absence of evidence")."), report and recommendation adopted sub nom. *Jeffrey v. Kijakazi*, No. 21CV06502JLRBCM, 2023 WL 3477580 (S.D.N.Y. May 16, 2023); *Reynolds v. Colvin*, 570 F. App'x 45, 47 (2d Cir. 2014) ("A lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits. *See Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir.2012)."); *Joseph Alex T. v. Comm'r of Soc. Sec.*, No. 121CV00801JMFGRJ, 2022 WL 3160716, at *4 (S.D.N.Y. June 27, 2022) ("In other words, the fact that Dr. Mackinnon assessed limitation in bending, lifting, pushing, pulling, or carrying, but not with respect to fine motor activities, can be relied upon as evidence that Dr. Mackinnon assessed no limitation as to such activities."), report and recommendation adopted sub nom. *Tashman v. Kijakazi*, No. 21CV0801JMFGRJ, 2022 WL 3159318 (S.D.N.Y. Aug. 8, 2022).

Consequently, viewing the ALJ's decision as a whole, the Court finds that the ALJ's failure to discuss Plaintiff's IBS and gastroparesis at step two was harmless, and that the RFC finding is supported by substantial evidence.

<u>The ALJ's Alleged Error at Step Four</u>

Plaintiff alternatively contends that the ALJ erred by classifying her past relevant work as that of "Finish Inspector," rather than "Hull Inspector."  "The inquiry in Social Security benefits cases is not whether a claimant is able to perform the duties of her previous job, but whether the claimant is able to perform the duties associated with her

17

previous 'type' of work." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir.1981)).  The Court here finds that Plaintiff's argument lacks merit for essentially the same reasons argued by Defendant, set forth earlier. Namely, Plaintiff is simply incorrect in asserting that her work as a paint inspector more closely resembles the DOT description for "Hull Inspector," for several reasons.  First, the Hull Inspector's job primarily involves inspecting the structural integrity of ships, which Plaintiff never did.  Rather, Plaintiff's work was limited to inspecting paint on parts of ships, which, according to the DOT description, is a minor aspect of the Hull Inspector's job.  Moreover, the VE classified Plaintiff's work as a paint inspector as unskilled, with an SVP of 2, while the Hull Inspector's job is listed as highly skilled with an SVP of 8. Consequently, Plaintiff's past work as a paint inspector is very dissimilar from the job of Hull Inspector.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 8) for judgment on the pleadings is denied, and Defendant's cross-motion (ECF No. 10) for the same relief is granted.  The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
       September 20, 2023

ENTER:

*Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge